STATE el rel. POLLEY, Plaintiff, v. ANDERSON, State Auditor, Defendant.

(140 N. W. 736.)

1.   **Officers—Compensation—Constitutional and Statutory Provisions.**
The legislature is without power to increase or diminish any salary fixed by the Constitution, or to authorize the payment of either salary or expenses for any time not included within the

term of office; but, the Constitution not having fixed time or mode of payment, it·may exercise its discretion 'therein' to meet the financial convenience of the state ·and its officers.

2. **Mandamus—Payment of Officers' Salaries—Payment in Advance of Services—Form of Voucher—Fractional Months.**

. Under Laws 1911, Chap. 82, the general appropriation act, providing that all salaries shall ·be payable in equal monthly installments, on certified vouchers approved by the Auditor, who shall not issue warrants to any person in excess of the special appropriation therein, and Laws 1911, Chap. 239, providing that expense accounts shall be paid each month in $50. installments, **Held**, that under these statutes the Auditor cannot be compelled by mandamus to pay any officer ·a salary in advance of or before official services have been rendered or expenses incurred.

3. **Mandamus—Payment of Salary—Calendar Months.**

Laws 1911, Chap. 82, Sec. 43, provides that all appropriations shall be used for specific purposes therein mentioned and no other, and that all items for salary shall be payable in equal monthly installments on certified and approved vouchers, the Auditor not' to issue warrants in excess of the appropriation especially made therein; Laws 1911, Chap. 239, provides that expense accounts shall be paid in monthly installments upon certified filed vouchers; and Pol. Code, Sec. 309, provides that the fiscal year shall commence July 1st and end June 30. All appropriations for salaries and expenses are made specifically for each fiscal year, no claim therefor being payable out of the appropriation for any preceding or succeeding year. Relator's salary was $300. per year, with an additional expense allowance; he took, his official oath on and served from January 7th, and·on Feb. 8th filed with the State Auditor vouchers for $250. salary and for expenses, both "for January," 1913. **Held**, on mandamus to compel Auditor to deliver warrants thereon, that the payment of salary was controlled by the fiscal and calendar month, and not by the official month; that the form of the voucher is material, and its language, not the date of its presentation, advises Auditor of character and extent of the claim; that the Auditor was required to adjust monthly· payments so as to coincide with the actual periods of official service in calendar months, as by payment on separate voucher from January 7th to January 31st, and that vouchers are not payable in part out of installments for two distinct months; that the fact that the voucher was presented on February 8th did not advise him that the claim was for salary only from January 7th to February 8th; that the separate vouchers should each cover a whole fiscal or calendar month, that the "equal installment" for any fiscal month is not payable unless the official service covered

the entire month; and that on the voucher filed mandamus will not lie.

(Opinion filed March 31, 1913.)

· Original proceeding in mandamus by the State of South Dakota on the relation of Samuel C. Polley against Henry B. Anderson, as State Auditor of the State of South Dakota, to require defendant to issue a warrant for salary and official expenses. Peremptory writ denied, and proceeding dismissed.

· *Royal C. Johnson,* Attorney General, for Plaintiff.

The terms of office of ex-judges Corson and Haney expired on the 7th day of January, 1913, being the first Tuesday after the first Monday in January, as fixed by the constitution. Section 19, Article 26, State Constitution.

The terms of office of state officers expired on the 7th day of January, 1913, which was the first Tuesday after the first Monday in January, in accordance with Section 19, Article 26, State Constitution. Section 20, Article 26, fixes the date of our general elections on the first Tuesday after the the first Monday in November. Sections 19 and 20, Article 26, State Constitution, are legally existing provisions of the. constitution and control the terms of office of these officers and the time of their election.

A schedule annexed to a state constitution, requiring all officers to qualify within a certain time after they have been notified of their election, is mandatory, has all the force of a constitutional provision, and should be construed by the same rules. State v. Johnson, 26 Ark. 281.

The ordinance, appended to the constitution, is a part of the fundamental law of the land, and of equal authority upon executive, legislative and judicial departments of the state, as if it formed a component part of the constitution. State v. Johnson, 26 Ark. 281; Stewart v. Crosby, 15 Tex. 546; 8 Cyc. 724; 7 Cyc. 729; People v. Albertson, 55 N. Y. 55; Section 1797, Political Code.

This statute does not apply to supreme court judges and state officers mentioned in the above cited provisions of the constitution. A statute cannot contravene a constitutional provision, and the words in this section, "Except where otherwise specially provided," except this statute from applying to the officers named in the constitutional provision.

Officers qualifying and entering upon the duties of their office under a statute or constitutional provision hold their office for an official term,· which does not necessarily correspond with the calendar or fiscal year. United States v. Dickson, 15 Pet. 141, 10 Law Ed. 689.

The constitutional and statutory provisions provide that the judges of the supreme court shall receive an *annual salary*. The term "annual salary," as used in these provisions, has reference only to the rate at which the salary is to be computed and paid, and not to the time when such rates should commence or terminate. State v. Thompson, 36 Mo. 66; Marion County Fiscal Court v. Kelley, 22 Ky. Law. Rep. 174, 56 S. W. 815.

The term "annual," as used in these constitutional and statutory provisions signifies "once in a year," but does not signify at what time in the year and is construed together with the other statutory and constitutional provisions which fix the exact date of the beginning and expiration of the official term. McMaster v. Insurance Co., 99 Fed. 856, 40 C. C. A. 119; Bond v. Clark, 88 Mass. 361.

In other words, where the law of this state fixes the date on which a state officer enters or retires from office, such date fixes the beginning or end of the *official* year, and the annual salaries of such state officers are computed and paid with reference to the first day of the official year, and not with reference to the first day of the fiscal or calendar year. United States v. Dickson, supra.

The natural interpretation of these words certainly is that the salary is to commence at the time when the service is to commence, and they are to be contemporary with each other. We believe this to be the uniform interpretation of all laws of this sort, and that when any person takes office in an intermediate time, between one quarter and another, the practice is to pay him a proportion of the quarter's salary accordingly, and if he leaves office before the end of his official year to pay him for the proportion of the last quarter.

Chapter 110, Laws of 1901, provided that each judge shall receive an *annual salary* of $3,000.00. Section 623, Political Code, provides that each judge of the supreme court shall receive an *annual* salary of $3,000.00, payable quarterly.

Section 623, Political Code, authorized the annual salary of the judges of the supreme court to be payable quarterly. Presumably, for the financial convenience of the state officers and employees, Section 37, Chapter 13, Laws of 1903, the general appropriation act, provided that all items of appropriations for salaries shall be payable in equal monthly installments. Section 43, Chapter 82, Laws of 1911, the general appropriation act, is as follows:

"All accounts herein appropriated shall be used for the specific purpose herein mentioned, and no other, and the state auditor shall issue his warrants on certified, itemized and approved vouchers filed in his office, except that all items for salary shall be payable in equal monthly installments on certified vouchers filed in the office and approved by him, and the auditor shall not issue warrants to or for any person, department or institution in excess of the appropriation especially made herein, except as provided by the provisions of this act, or may hereafter be provided by law."

Under this statute, all items for salary shall be payable in equal monthly installments.

In my examination of this question, I find that, in times past, it has been the interpretation of the law and the custom of the auditor's department to pay the annual salaries of state officers in equal monthly installments with reference to the official year as prescribed by law, and not in accordance with the calendar year. In fact, this is the first instance I have found, or to which my attention has been called, where an annual salary was computed by the calendar year and not in accordance with the above construction of the law.

On the principle of contemporaneous exposition, common usage and practice, under the law, or a course of conduct indicating a particular way of understanding it, or the construction placed upon it by the officers whose duty it is to execute it, is entitled to great consideration, and such construction should not be disregarded or overturned unless it is clearly erroneous. 36 Cyc. 1139-40; State v. Frear, 138 Wis. 536; 120 N. W. 216; State v. Davis, 62 W. Va. 500, 60 S. E. 584, 14 L. R. A. (N. S.) 1142; Garr, Scott & Co., v. Sorum, 11 N. D. 164, 90 N. W. 799; Suth. St. Const., Section 309.

The construction of the law as above indicated will continue

the uniform system, which has been heretofore adopted and followed for a long period of time in the office of the state auditor. Any other construction will necessarily cause endless confusion, not only among the state officers, but among all of the county officers of the sixty-one counties of this state.

The term of office of all county officers, excepting county auditor, for the years 1911 and 1912 ended on January 6, 1913. Section 1796, Political Code, as amended by Chapter 75, Laws of 1905.

From this section it will noted that the term of office of county officers, except the county auditor, for the years 1913 and 1914 begin on January 6, 1913, which was the first Monday; and accordingly if your county officers qualified this year on the 7th of January the old officers held over but one day.

Attention is called to Section 1798, Political Code.

The provisions in the statute relating to the annual salaries of county officers must necessarily be construed the same as those provisions relating to the annual salaries of state officers, and in case the annual salary of the state or county officer is not to be computed with reference to the official year, but with reference to the first day of the calendar year, the construction would lead to absurd consequences. The county officers of the sixty-one counties of this state every two years would submit their claim for additional compensation from the first day of January to the first Monday of January, and the amount so paid for said period would be deducted from the annual salary of their successors.

To say nothing of suits which might be instituted to recover back-salary in case the construction placed upon the law of this state by the plaintiff is not sustained, the confusion hereafter arising over the disputed period in issue would seem to be sufficient to receive grave consideration by this court.

## IN REPLY.

Defendant states in his brief that the proposition to be decided in this case is as follows: "Then the precise question to be determined is whether the relator is entitled to compensation and expenses for any period before his term of office and period of service began, or before noon of January 7, 1913."

This is not the question to be determined in this case at all. The question is whether or not the relator is entitled to one-

twelfth of this year's salary for the performance of one-twelfth of a year's services. No claim is made for pay for any time prior to the 7th day of January, 1913. Relator's term of office began on that date, and his voucher was not filed nor pay for any time demanded until the 8th day of February, 1913. The fact that the vouchers filed state: "Salary for January, 1913," is of no significance whatever. It is made out in exactly the same form as the vouchers of the other Judges of this court and other state officers who received one-twelfth of an annual salary thereon. The question is, whether or not the relator is entitled to his annual salary of $3,000.00 a year and an expense allowance of $600.00 a year in "equal monthly payments." It is immaterial, so far as the issues of this case are concerned, whether the monthly payments are made at the end of the calendar month or at the end of the official month. It is the practice of the defendant in paying salaries to issue warrants for one twelfth of a year's salary at the end of the calendar month, but, in this case, the pay was not demanded until the end of the official month. That is, the end of the first official month of the year 1913, which expired on the 7th day of February, 1913. And it is wholly immaterial whether the voucher stated, "Salary for January, 1913," or "Salary for the first month of 1913," and any argument based on any such distinction is a mere quibble and an effort to avoid a consideration of the real merits of the case. Defendant states in his brief that he desires "to have the controversy determined on its merits," but his argument based upon the distinction between January, 1913, and the first month of 1913, is an attempt to get just as far from the merits of the controversy as possible.

Neither is there any force in defendant's argument that the Law of 1911 "does not authorize the payment of any salary in advance of, or before the officer's period of service commences." No such claim is made by plaintiff. No pay is asked for any time for which service was not rendered, and if defendant means what he says in his brief, to-wit: that when plaintiff "had served one-twelfth of one year he was entitled to one-twelfth of one year's salary," he admits everything plaintiff is contending for.

Neither was there ever any claim made by plaintiff, nor suggestion on his part or on the pleadings in this case, that he was

"entitled to receive $250.00 as salary or $50.00 as expense money for the month ending January 31, 1913."

The pleadings in this case do not raise any issue relative to the services performed by relator's predecessor in office, nor to the amount of pay that has been received by him for such service as he may have rendered; and that portion of defendant's argument relating thereto is wholly immaterial to any issue involved herein. It may be true, as stated by defendant, that "relator's predecessor's services began on November 2, 1889, and ended at noon, January 7, 1913." It is also true that during all of that time he was receiving an annual salary, and received a full year's pay for every year's services performed. The various years for which he received pay, at least from the first Tuesday after the first Monday in January, 1894, began at noon, on the first Tuesday after the first Monday in January of each year. The year 1912 began at noon on the first Tuesday after the first Monday in January, 1912, and expired at noon on the first Tuesday after the first Monday of January, 1913, which happened to fall on the 7th day of January, 1913; so that services rendered between the 1st and the 7th day of January, 1913, was not extra time nor over time, but a part of the official year 1912; and, having drawn a full year's salary for the year 1912, he was not entitled to any extra pay or over pay for the time between the 1st and 7th of January, 1913.

That the method of computing yearly terms of office contended for by defendant is not correct will be seen by applying the calendar to the terms of office of the elective State officers whose terms of office cover a period of two years. Let us take, for instance, the office of Governor Byrne:

1. Governor Byrne's term began January 7, 1913, and will end January 5, 1915. (Two days less than two years.)

2. His successor's term will begin January 5, 1915, and will end January 2, 1917. (Three days less than two years.)

3. The term of office of the successor of the latter will begin January 2, 1917, and will end January 7, 1919. (Five days more than two years.)

It is relator's contention that in each of these three cases the Governor will be entitled (under the present salary) to $6.000 for each biennial period.

If the contention of defendant is correct, then in case No. 1 above mentioned, the Governor will be entitled to only 728-730 of his biennial salary. In the second case he will only be entitled to 727-730 of his salary. In the third case he will be entitled to 735-730 of his biennial salary. In other words, in the last case he will get five days extra compensation. This is not the law. The salary is annual, regardless of the fact that by reason of the calendar the official year may be a day or two short of the calendar year, or may be a day or two longer than the calendar year.

The contention of the defendant would make the salary payable on a daily basis, instead of an annual basis, and violates Chapter 82, Laws of 1911, which requires salaries to be paid in twelve equal monthly installments.

*Spangler & Haney*, for Defendant.

Relator is not entitled to the relief demanded or to any relief whatever. His demand upon the defendant was, as shown by the vouchers, that he should receive as salary $250.00, for the month of January, 1913, and $50.00 for expenses for the same month, both including the first six days of that month, during which he did not serve as supreme judge, was not entitled to serve as supreme judge and his predecessor did serve and was entitled to serve as supreme judge from the first district.

Relator alleges and the court will take notice that his term of office and period of service began at noon on January 7, 1913. Then the precise question to be determined is whether the relator is entitled to compensation and expenses for any period before his term of office and period of service began, or before noon of January 7, 1913.

The State Constitution provides that "The judges of the supreme court shall each receive an annual salary of $2,500.00 (now $3,000). Const. Art. 21, Sec. 2. It is silent as to when such salary shall be paid.

The word "salary" has been defined by the supreme court of the United States to be "A fixed annual or periodical payment for service, depending upon the time and not upon the amount of service." Benedict v. United States, 176 U. S. 360.

It follows that judges of the supreme court of South Dakota are entitled to receive $3,000.00 during the time of their service. The Constitution does not declare that they shall receive

$18,000.00, for the term of six years. One who is elected for. six years might serve several days or months more than six years by reason of his successor's failure to qualify. No one will contend that he would not be entitled to compensation during the period of such service. The rule established by the Constitution cannot be affected by any act of the legislature. When the Constitution declares that an officer shall receive a certain salary no appropriation is required by the legislature. The mandate of the Constitution operates of its own force and must be obeyed by all state officers regardless of any action of the legislature. State v. Hickman, 9 Mont. 370.

Assuming the provisions of the general appropriation act of 1911, authorizes the payment of one-twelfth of one-year's salary each month, it certainly does not authorize the payment of any salary in advance or before the officer's period of service commences. So, when respondent had served one-twelfth of one year he was entitled to one-twelfth of one year's salary and not until then. When he shall have served one year he will be entitled to one year's salary and not until then. Therefore, respondent was not entitled to receive $250.00, as salary or $50.00, as expenses, for the month ending January 31, 1913. And this is so whether or not his predecessor received salary and expenses for the first six and one-half days of that month.

It is manifest that two persons cannot be entitled to the salary of the same office, for the same period of time. Relator's predecessor was entitled to the salary and expenses to the 7th day of January, 1913. Dillon v. Becknell, 116 Cal. 111.

Relator's predecessor's service began on November 2, 1889; it ended at noon January 7, 1913. During every day of that period he was entitled to compensation for. his services at' the rate per annum prescribed by the Constitution. Whether he has received more or less than he was entitled to under the Constitution is a question not involved in this proceeding.

Nothing that has been done by the defendant with respect to warrants issued to the relator's predecessor can possibly affect the amount of salary which the relator is entitled to receive or will hereafter receive.

SMITH, J. On February 14, 1913, Samuel C. Polley filed with the clerk of this court his petition for an alternative writ of

mandamus, alleging that at the general election in November, 1912, he was elected Judge of the Supreme Court of South Dakota, from the First Supreme Court District, for a term of six years, beginning on the first Tuesday after the first Monday in January 1913, and ending on the first Tuesday after the first Monday in January, 1919; that on the 7th day of January, 1913, he filed his oath of office and qualified, and ever since has been and now is a duly elected, qualified, and acting Judge of the Supreme Court; that on the 8th day of February, 1913, he filed with the defendant, Henry B. Anderson, as State Auditor, itemized vouchers for payment of salary and expense account, in equal monthly installments, to-wit, $250 per month for salary, and $50 per month for expense account, and demanded that defendant issue to him warrants on the State Treasurer thereon; that defendant, as State Auditor, refused, and now refuses, to issue warrants for said sums of money, or any other sums, except a warrant for $195.17 for salary, and a warrant for $39.83 for expense account; that plaintiff is without any plain, speedy, or adequate remedy in the ordinary form of law, and prays appropriate process commanding and requiring defendant to execute and deliver warrants as demanded, to wit, a salary warrant for $250, and expense account warrant for $50, for the month of January, 1913.

On the return day of the writ (February 19, 1913) defendant made return, alleging, first, that the petition should be dismissed for the reason that it appears, on the face of the writ and application therefor, that neither plaintiff nor relator is entitled to the relief demanded nor any relief whatever. Further answering the writ, defendant alleges that on the 8th day of February, 1913, plaintiff presented to defendant, as State Auditor, two certain instruments, or vouchers, copies of which are attached, marked Exhibits A and B; that defendant, believing in good faith that plaintiff was neither entitled to receive a salary warrant for $250 for the month of January, 1913, nor an expense warrant for $50 for the month of January, 1913, declined to comply with plaintiff's demand, for the reason that plaintiff's term of office commenced at noon on the 7th day of January, 1913; that defendant was prompted by no other motive or desire except properly and lawfully to perform his duty as State Auditor; and that plaintiff was not and is not entitled to compensation as salary or expense for any period

of. time prior to noon, the 7th day of January, 1913. Defendant prays that the alternative writ be vacated and the proceeding dismissed.

The two vouchers attached and referred to in the return are as follows:

### EXHIBIT A.

"South Dakota, February 7th, 1913.

"The State of South Dakota, Dr., to S. C. Polley, 1st District, Office of Judge of Supreme Court.

"For salary only.

"Salary for January, 1913, $250.00."

Back: "I hereby certify that the within account is just and true, and that no part of the same has been paid, and the same is hereby approved.            S. C. Polley.

"Office of Judge of Supreme Court, First District.

"Received of the State Auditor warrant No. ———— for $250.00 in full payment of the within account.       ——."

Exhibit B is identical in form, covering expense account for $50.

On the hearing both parties appeared by counsel and have filed briefs setting forth their respective contentions. It is conceded by counsel that Judge Corson, plaintiff's predecessor, remained in office until the 7th day of January, 1913. It is also conceded that plaintiff's actual tenure of office began upon his qualification on January 7, 1913. Section 2, art. 21, of the Constitution, is as follows: "The Judges of the Supreme Court shall each receive an annual salary of $2,500: Provided that the Legislature may after the year 1890, increase the annual salary of Judge of the Supreme Court to $3,000." Acting under the authority conferred by. this section of the Constitution, the Legislature by chapter 110, Laws of 1901, increased the annual salary of the Judges of the Supreme Court to $3,000. Section 623, Political Code, 1903, provided that each Judge of the Supreme Court should receive an annual salary of $3,000, payable quarterly. The time of payment of salaries was changed by section 43, c. 82, Laws of 1911, the general appropriation act, which provides as follows: "All amounts herein appropriated shall be used for the specific purpose herein mentioned and no other; and the State Auditor shall issue his warrants on certified itemized and approved vouchers filed

in his office except that all items for salary shall be payable in equal monthly installments on certified vouchers filed in the office and approved by him, and the Auditor shall not issue warrants to or for any person, department or institution in excess of the appropriation especially made therein, except as provided by the provisions of this act, or may hereafter be provided by law." Chapter 239, Laws of 1911, provides that the expense account shall be paid each month in $50 installments, upon certified vouchers, filed in the office of the State Auditor. Under these statutes, both salary and expense are payable in equal monthly installments.

[1] It must be conceded that the Legislature is without power to either increase or diminish any salary fixed by the Constitution. It must likewise be conceded that the Legislature is without power to authorize the payment of either salaries or expenses for any period of time not included within the term of office. Both the Constitution and the statutes provide that judges shall receive an annual salary. The Constitution does not fix either the time or mode of payment, but leaves both to legislative control. In fixing both time and mode of payment, the Legislature may exercise its discretion to meet the financial convenience of the state and its officers. As we have seen the Legislature has exercised this discretion by providing that all items for salary or expense shall be paid within fiscal years, and upon vouchers, and in equal monthly installments. Plaintiff's counsel bases his argument mainly upon the requirement of the statute that payment of salaries must be made in equal installments, and contends that it is the duty of the Auditor to issue 12 warrants of $250 each, aggregating the annual salary of $3,000, and 12 warrants of $50 each for expenses, and that the official year and month, beginning January 7, 1913, control the payments, and that they are not controlled by the fiscal or calendar year. It is clear that plaintiff cannot be entitled to a warrant, either for salary or expenses, covering the period from January 1 to January 7, 1913, and in his brief he expressly disclaims any such contention. The Legislature must be deemed to have been cognizant of the law that a public officer can be paid for services and expenses incident thereto only during the period of actual official service, and at a rate computed upon the basis of the annual salary and expense allowance, whether such

service and expense extend over the whole or only a part of the official term; and we are clearly of opinion that where the law fixes an annual salary, and provides that it shall be paid in monthly installments, precisely the same rule of computation is applicable to monthly installments.

[2] We think it clear also that, under any view of these statutes, the Auditor cannot be compelled by mandamus to pay any officer a salary in advance of or before official services have been rendered or expenses incurred. We do not understand plaintiff's counsel to contend that the Auditor is without authority to split a payment on account of official salary or expense for any year or month, or that it is his legal or official duty to issue in every instance a single warrant to one person for the full amount of a month's salary and expense.

[3] The real contention of plaintiff is that the form of the voucher is immaterial, and that in this case the voucher should be construed as covering the official month from January 7th to February 8th. It needs no discussion to show that the official duty of the Auditor as to payment of claims against the state must be measured by the rules established by legislative enactment governing the time and mode of payment.

Section 43, c. 82, Laws of 1911 (the general appropriation bill) provides that all moneys therein appropriated shall be used for the specific purpose therein mentioned and no other, and that payments out of such funds shall be made by warrants on certified, itemized, and approved vouchers filed in his office.

Section 309, Pol. Code, further provides: "That the fiscal year for the state shall commence on the 1st day of July, and end on the 30th day of June in each year, and all reports required to be made annually to the Governor, shall be made to embrace the receipts, expenditures and business done during such fiscal year."

All appropriations for payments of salaries and expenses are made specifically for each fiscal year; and all payments are required to be made out of the specific appropriations for the current fiscal year. No claim for salary or expenses can be paid out of an appropriation for any preceding or succeeding fiscal year. It must be apparent, therefore, that plaintiff is in error in claiming, as he does in his brief, that "the annual salaries of the state officers are computed and paid with reference to the first day of the official

year, and not with reference to the first day of the fiscal or calendar year," because, while the right to the salary attaches at the time the officer legally enters upon the performance of his official duties, the payment of the salary is controlled by the appropriation made for the current fiscal year. It necessarily follows that the begin· ning and end of the fiscal year mark the time within which the Auditor must compute payments of installments of salary.

Plaintiff's argument in the reply brief is that, as his incumbency of office began on the 7th day of January, 1913, a payment of one-twelfth of the annual salary became due on February 8, 1913; i. e.; upon the expiration of the first official month. The contention is that it is immaterial, so far as the issues in this case are concerned, whether the monthly payments are made at the end of the calendar month or at the end of the official month. Counsei might be correct in his view, if the official duties of the State Auditor were controlled by the subdivisions of the official year. But we think it plain that, in the performance of his official duties, the Auditor's acts are controlled by the monthly subdivisions of the fiscal year. Plaintiff says in his brief: "No claim is made for pay for any time prior to the 7th day of January, 1913." His contention then is that monthly claims for salary accrue on the 8th day of each month. This contention would make it necessary to disregard the form of the voucher submitted to the Auditor in this case, and to assume, as counsel says in his brief, that the form of the voucher is "of no significance whatever." But we cannot agree with the view that the form of the voucher is immaterial. The law requires the Auditor to act upon vouchers; and the very purpose of a voucher is to advise the Auditor of the extent of the claim made. It is not the date of the presentation of the voucher which advises the Auditor of the character and extent of the claim, but the language of the voucher itself. In this case, the voucher in express terms covered and claimed payment "for salary for January, 1913." The fact that it was presented on February 8th did not advise the Auditor that the claim was for salary from January 7, 1913, to February 8, 1913; nor does the Auditor seem to have been so advised until the reply brief was filed in this case. But, if the voucher had been so framed as to claim payment from January 7th to February 8th, the question would still remain as to

the duty of the Auditor to pay to plaintiff a full installment of $250 thereon.

The fiscal year within which this payment must be made began July 1 1912, and will end June 30, 1913. If each monthly period begins on the 7th of the month, and the monthly installment of salary becomes payable on the 8th of the succeeding month, the last payment in the current fiscal year would mature on the 8th day of July, 1913. That portion of the salary covering the period from July 1st to July 8th could not be paid out of the appropriation for the fiscal year ending June 30th; and the Auditor could not be compelled to issue, upon a voucher for the month of June, a warrant payable out of appropriations for two different fiscal years.

Calendar and fiscal years coincide in monthly subdivisions. The calendar year begins January 1st, while the fiscal year begins July 1st. It follows that fiscal and calendar months are identical, and that the equal monthly payments required by the statute are intended to cover the fiscal or calendar months. Hence we think it clear that the Auditor is required to adjust monthly payments so that they shall coincide with the actual periods of official service in calendar months of the fiscal year. This could only be accomplished in this case by payment, upon a separate voucher, covering the period between January 7th and January 31st. The Auditor cannot pay upon any voucher except from a current available appropriation. Therefore, on the 8th day of July, 1913, it would be necessary for plaintiff to present a separate voucher covering that portion of the new fiscal year between July 1 and July 8, 1913. It seems plain, having in mind the method of making specific appropriations, that the Legislature did not intend that a single monthly voucher should cover portions of two months, but that the voucher or vouchers, for the equal installments of salary, should cover a whole fiscal or calendar month within which official services were rendered by one or more persons. The statute does not require the entire "equal installment" for any fiscal month to be paid to one person, unless the official services of that person have extended through the entire month. The annual monthly installment is appropriated for the office and not for the officer. For example, one "equal installment" of $250 salary must be paid by the state, for the whole fiscal month of January, to the person or persons

who filled the office of supreme judge during that month. Two persons might have filled that office during that month, but each would be entitled only to such proportion of the installment as his period of service bears to the entire month, and each would be entitled to a warrant upon a voucher covering and showing what part of the month he had performed such official service. In other words, the statutory requirement that payments of annual salaries shall be made in equal monthly installments is equivalent to a specific appropriation of a fixed sum for each fiscal or calendar month, out of which all official services during any one fiscal month shall be paid whether the services be performed by one or more persons who may happen to fill the office during that month. The importance of the form and contents of a voucher thus becomes apparent. In view of the division of the annual appropriation into specific monthly appropriations, in legal effect, salary vouchers can be paid only out of the installment appropriated for the month during which the service is performed, and cannot be made payable in part out of installments for two distinct months. It follows that in the case at bar the voucher presented by plaintiff must be paid out of the installment of $250 for the month of January, 1913, in proportion to plaintiff's incumbency during that month, to wit, from January 7th to January 31st, and that no part of the installment for February, 1913, could be paid on this voucher, or even upon a voucher covering the whole period from January 7th to February 8th, constituting the official month as claimed by plaintiff.

At the hearing, plaintiff's counsel cited United States v. Dickson, 15 Pet. 141, 10 L. Ed. 689, as an authority sustaining his contention. On the contrary, we are entirely clear that this decision sustains our views. In summing the discussion in that case, Justice Story says: "The object of the act of 1818 manfestly is to provide a suitable compensation for the receivers and registers of public moneys for the public lands. The compensation is for services to be rendered by them, officially, during their continuance in office; and up to a certain point, at least, it is in exact proportion to the extent and duration of those services, and the responsibility incurred thereby. The compensation is measured by years. It is to be by an annual salary, and by a commission not exceeding an annual amount. The words are that 'they shall receive an annual

salary of $500 each.' The natural interpretation of these words certainly is that the salary is to commence at the time when the service is to commence, and that they are to be contemporaneous with each other. We believe this to be the uniform interpretation of all laws of this sort, and that, when any person takes office in an intermediate time between one quarter and another, the practice is to pay him a proportion of the quarter's salary accordingly, and, if he leaves office before the end of his official year, to pay him for the like proportion of the last quarter."

The same view is expressed in Dillon v. Bicknell, 116 Cal. 111, 47 Pac. 937. That case involved the salary of the district attorney, which was fixed by law at $4,000 per annum, and was paid in monthly installments of $333.33 1-3 per month by warrants drawn upon the defendant, county treasurer. Plaintiff claimed that he had served five days more than two official years, and demanded that defendant, as auditor, issue a warrant on the county treasurer for salary for these five days, amounting to $54.50. The auditor had refused to issue the warrant, and the court below had rendered judgment directing a peremptory writ. From this judgment, the appeal was taken. The judgment appealed from was affirmed. In concluding the opinion, the court says: "Indeed, under the statute fixing the commencement and termination of the terms of county officers, it can never happen that the term consists of precisely two years, it being sometimes more and sometimes less; and therefore the provision fixing the compensation at an annual sum should be construed as fixing the rate of compensation to be paid for the time the officer actually serves. This construction will do exact justice between the preceding and succeeding officers, and not increase the burden to be borne by the people." The case is very analogous to the case at bar in its facts, and the legal reasoning sustains our views. The conclusion reached is identical with that announced in United States v. Dickson, supra.

Allusion is made in plaintiff's brief to the custom of the Auditor's department in paying annual salaries of state officers in monthly installments measured by the official year. It is suggested, but not shown, that such payments have not been made in accordance with the calendar year, but according to the official month and year; and it is urged that the principle of contemporaneous exposition and usage should be given weight. The same proposition

was urged in the cast of United States v. Dixon, supra. In that case the court said: "It has also been argued that the uniform construction given to the act of 1818, ever since its passage, by the Treasury Department, has been that the act has reference to the fiscal year. The construction so given by the Treasury Department to any law affecting its arrangements and concerns is certainly entitled to great respect. Still, however, if it is not in conformity to the true intendment and provisions of the law, it cannot be permitted to conclude the judgment of a court of justice. * * * It is not to be forgotten that ours is a government of laws and not of men, and that the judicial department has imposed upon it, by the Constitution, the solemn duty to interpret the laws in the last resort; and however disagreeable that duty may be, in cases where its own judgment shall differ from that of other high functionaries, it is not at liberty to surrender or to waive it."

We think, however, that such considerations have no application to the case before us, for the reason that the interpretation of the law urged by the Auditor is not adverse to, but in accordance with, the views entertained by the court in this case. We are or opinion the Auditor was right in his contention that it was not his duty to issue a warrant for $250 salary and $50 expense on a voucher covering the month of January, 1913, and that it was his duty to issue warrants, on the voucher presented, only for that portion of the month during which the plaintiff was actually in office.

The peremptory writ must be denied, and the proceeding dismissed, but without costs to either party.

POLLEY and GATES, JJ., not sitting.